**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  14-cv-01916-REB-NYW

BRUCE EDWARD PETERSON,

     Plaintiff,

v.

DR. TIMOTHY P. CREANY,
DR. BEDDY,
DR. DAVID TESSIER,
RICK MEICER, R.N.,
FNU WEINHIMER,
WARDEN LOU ARCHULETTA,
JOHN DOE, and
JANE DOE,

     Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

     This civil action comes before the court on the Motion to Dismiss or Alternatively Motion for Summary Judgment filed by Defendants Timothy Creany, David Tessier, Rick Meicer, Lou Archuleta, Hope Beatte, and Mark Wienpahl[1] (collectively, "Defendants").  [#22, filed March 16, 2015].  This matter was referred to this Magistrate Judge pursuant to the Order Referring Case dated May 1, 2015 [#34] and the memorandum dated June 8, 2015 [#38].

---

[1] Dr. Beatte, Mr. Wienpahl and Warden Archuleta's names are misspelled in Plaintiff's filings, but are corrected in Defendants' Motion to Dismiss or Alternatively Motion for Summary Judgment.  [#22].  The court uses the correct spellings in this Recommendation, but for the sake of consistency, the court does not *sua sponte* correct the case caption.  To the extent any portion of this case survives dismissal and/or summary judgment, it may be appropriate to correct the caption.

After carefully considering the Motion and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that Defendants' Motion to Dismiss be GRANTED IN PART, and that the Motion to Dismiss be CONVERTED to a Motion for Summary Judgment solely with respect to the issue of exhaustion of administrative remedies and GRANTED.

## PROCEDURAL HISTORY

Mr. Peterson, a *pro se* prisoner incarcerated at the Fremont Correctional Facility ("FCF") in Canon City, Colorado, filed this lawsuit on July 9, 2014 pursuant to 42 U.S.C. § 1983 claiming a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* [#1].  Plaintiff also filed a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, which was granted on July 10, 2014.  [#2, #4].   That statute and the Local Rules of this District require a court to evaluate a prisoner complaint and dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); D.C.COLO.LCivR 8.1(b).  On July 14, 2014, the court ordered Plaintiff to file an Amended Prisoner Complaint to address the following: his status as a qualified individual with a disability who was excluded from participation in or denied certain benefits of a public entity's services, programs, or activities, and that exclusion, denial, or discrimination was because of a disability; whether he exhausted the administrative remedies for both his § 1983 and ADA claims; the identified pleading deficiencies pursuant to Fed. R. Civ. P. 8; and the personal participation of each Defendant in the alleged violation.  [#5 at 2-3].

On August 14, 2014, Mr. Peterson filed an Amended Complaint naming Defendants, along with John Doe and Jane Doe, and asserting one claim for deliberate indifference in violation of his Eighth Amendment rights.  [#6].  While Plaintiff also identifies "42 U.S.C. §12101-12213 (A.D.A. Title II) violations" as an additional or alternative jurisdictional basis, he does not allege any facts to establish that he was discriminated against based on his disability. [#6]. He seeks injunctive relief and damages in the amount of $600,000 from each Defendant. [*Id.* at 10].  The following recitation of facts is drawn from Plaintiff's Amended Complaint, and is accepted as true for the purposes of considering this instant motion.

Plaintiff suffers from a variety of medical maladies including bipolar disorder, depression, seizures, and Hepatitis C ("hepatitis").  [#6 at 3].  He was assigned within the Colorado Department of Corrections' ("CDOC") database a designation of "medical 4-chronic care" that identified his diagnoses and medical needs, specifically that he was positive for hepatitis.  [*Id.* at 4, 5].  Plaintiff alleges that this designation was deleted by an unidentified person without his knowledge; and that between December 1, 2012 and the date of the Amended Complaint, he was prescribed "tegratol/carbamazepine"[2] for epilepsy and his bipolar disorder. [*Id.* at 4].  He alleges that according to CDOC and FCF policy, he was required to take this and all prescribed medicine or lose the privileges he had earned at FCF [#36 at 2], and that the medicine "reactivated" the hepatitis.  Following a blood test administered to Plaintiff, Defendant Dr. Creany "ordered Plaintiff to stop taking tegratol and sent orders to medication dispensary to cease and desist giving [him] tegratol."  *Id.*  Plaintiff alleges he nonetheless continued to suffer

---

[2]  The proper spelling of the drug is "Tegretol," which is the brand-name of the drug carbamazepine, but in this Recommendation and Order, where the court directly quotes from Plaintiff's papers, it maintains the spelling, capitalization, punctuation, and grammar used by Plaintiff.

blood clots, bruising, bleeding, and complications with his liver.  When he returned to medical seeking treatment, he was seen by an unidentified doctor, Defendant John Doe, who commented with regard to these symptoms, "[o]h well, that's what happens to old people," and prescribed Plaintiff "webutrin and carbamazepine/tegratol under another name for [Plaintiff's] mental health." *Id.*  Mr. Peterson alleges that as a consequence of Dr. John Doe re-prescribing tegratol, under the name carbamazepine, he suffered pain in his legs, joints, neck, stomach, head, chest, and lungs as well as swelling of his feet and throat.  *Id.*  He also alleges that after a third physician prescribed him pain medication, Defendant Meicer, a registered nurse, refused to provide the medicine due to its expense.  *Id.*  Instead, Defendant Meicer gave Plaintiff "a bag of ice which froze the blood clot in [Plaintiff's] right leg and [] left [him] with a limp and in constant pain of thrombosis…"  [*Id.* at 4-5].  Plaintiff alleges he continues to suffer many physical side effects including "severe confusion, constant joint pain," shortness of breath, swelling of feet and throat, and blood in vomit and urine, as well as severe pain.  [*Id.* at 5].

Defendants waived service on December 23, 2014. *See* [#11].  Defendants then filed the instant Motion on March 16, 2015, arguing that Plaintiff failed to state a cognizable legal claim, and in the alternative, had failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(a).  [#22].  On April 9, 2015, the undersigned presided over a Status Conference to discuss the briefing schedule for the Motion to Dismiss.  [#28].  Plaintiff filed a Response to the Motion on May 8, 2015 [#36], and Defendants filed a Reply on May 26, 2015.  [#37].  On June 9, 2015, Plaintiff filed a Surreply.  [#39].  Given Defendants' arguments regarding administrative exhaustion and their attachment of a declaration, this court specifically notified Plaintiff that Defendants had moved for summary

judgment in the alternative, and had attached papers outside of the pleadings for the court to consider.  [#40].  The court also expressly indicated that the court might convert the Motion to Dismiss to one for summary judgment; and therefore ordered Plaintiff, to the extent he "ha[d] any additional evidentiary support for his position regarding the issue of whether he has exhausted his administrative remedies," to file supplemental briefing on or before July 8, 2015.  [#40].  Plaintiff filed an additional Response on June 22, 2015.  [#41].

## STANDARD OF REVIEW

As an initial matter, because Defendants move in the alternative, this court must decide how to treat the Motion.  The Motion argues that summary judgment should be entered as to Defendants Tessier, Wienpahl, Archuleta, and Meicer for Plaintiff's failure to exhaust the administrative remedies prescribed under the PLRA as to these Defendants.  [#22 at 5].  The Motion does not argue exhaustion as to Defendants Creany or Beatte, or advance an alternative theory for entering summary judgment as to those Defendants.  Furthermore, the court has not yet held a scheduling conference in this matter and the Parties have not engaged in any discovery.  Under these circumstances, this court will consider Defendants' arguments pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure first; and then convert to a motion for summary judgment pursuant to Rule 56 only the portion of the Motion to Dismiss that speaks to the exhaustion of administrative remedies.

## I.      Fed. R. Civ. P. 12(b)(1)

Pursuant to Rule 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction.  Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction.  *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing

*Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

## II.      Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or

she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Peterson is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## III.     Fed. R. Civ. P. 56

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission

to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002). However, this standard does not require the court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs*, 117 Fed. App'x. 64, 69 (10th Cir. 2004)). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994) (citation omitted). The court may not enter summary judgment unless the moving party carries his or her burden under Rule 56 of the Federal Rules of Civil Procedure. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

Mr. Peterson is entitled to the same liberal construction of his pleadings under the Rule 56 standard as under Rule 12(b)(6). *See Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) ("The *Haines* rule applies to all proceedings involving a *pro se* litigant, including …

8

summary judgment proceedings.") (citations omitted).   However, the court cannot be a *pro se* litigant's advocate.   *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).   *See also Anderson*, 477 U.S. at 256 (The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.").

## ANALYSIS

### I.      Eleventh Amendment Immunity

Defendants are sued in their individual and official capacities.   [#36 at 2].   In their official capacity, they are immune from claims for monetary damages and retroactive equitable relief. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."   *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)).   The Eleventh Amendment bars suits against a state by its own citizens, and generally immunizes state defendants sued in their official capacities from liability for damages or equitable relief.   *See Johns v. Stuart*, 57 F.3d 1544, 1552 (10th Cir. 1995).   In addition, state employees acting in their official capacities are not "persons" subject to suit under § 1983. *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994).   An exception to this general bar is a suit in which a plaintiff seeks to prospectively enjoin a state official from violating federal law. *Johns*, 57 F.3d at 1552.   This prospective injunctive relief may take the form of requesting adequate medical treatment in the future.   *White v. Kansas Dept. of Corrections*, --- Fed. Appx. ----, 2015 WL 3797727, at *1 n.3 & 2 (10th Cir. June 19, 2015).

Accordingly, Plaintiff cannot pursue a § 1983 claim for damages against Defendants sued in their official capacity but may seek prospective injunctive relief, and may seek monetary damages as to Defendants in their individual capacity, should the court find that a constitutional

violation has occurred.  The court now turns to the question of whether Mr. Peterson has stated a cognizable claim against Defendants under the Eighth Amendment.

## II.    Deliberate Indifference

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law.  *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988).  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted).  The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  Prison officials may be liable for an Eighth Amendment violation for "indifference…manifested…in their response to the prisoner's needs or by…intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed."  *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014).

"The test for constitutional liability of prison officials involves both an objective and a subjective component." *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citation omitted).  First, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'"  *Id.* (quoting  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (holding that even a physician's grossly negligent medical judgment is not subject to scrutiny if the prisoner's need

for medical treatment was not obvious) (internal quotations and citation omitted).  Furthermore, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted).  The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain."  *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted).

Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind."  *Mata*, 427 F.3d at 751.  "Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain."  *Estelle*, 429 U.S. at 104 (internal quotation and citation omitted).  The Tenth Circuit recognizes two types of conduct constituting deliberate indifference.   The first occurs when a medical professional fails to properly treat a serious medical condition; the second occurs when a prison official prevents an inmate from receiving treatment or denies him access to medical personnel capable of providing treatment.  *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (internal citations omitted).   A prison health official who serves "'solely…as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill the gatekeeper role.'"  *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211.  The subjective standard requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and further citation omitted).   "'[A]n inadvertent failure to

provide adequate medical care' does not rise to a constitutional violation." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Estelle,* 429 U.S. at 105–06). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self*, 439 F.3d at 1231 (internal quotations omitted). Finally, "[a] defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted). The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156-57 (10th Cir. 2001).

A.     Defendants Archuleta and Tessier

Plaintiff alleges that Defendant Archuleta, the FCF Warden, and Defendant Tessier, the Health Services Administrator, are liable for deliberate indifference to his serious medical needs because Warden Archuleta is responsible for the alleged FCF policy requiring all prisoners to take prescribed medicine and Administrator Tessier "allowes the practice and is responsible for his medical staff and there actions." [#6 at 2, 8, 9; #36 at 3]. Plaintiff further alleges that Defendant Archuleta "failed in his duties to oversee inmate Peterson's basic needs," and is responsible for "the continued use of a policy that forces a mental health [patient] to take medication detrimental to his health"; and that Defendant Tessier "failed to properly oversee and coordinate his medical staff," and "did nothing" when Plaintiff alerted him to the issues surrounding the medication. [#6 at 8, 9]. Defendants argue that these allegations fail to establish the requisite personal participation in the asserted constitutional violation. This court agrees.

Prison officials cannot be held liable under a theory of *respondeat superior*. *See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677)). To succeed in a § 1983 suit against a government official for conduct that arises out of his supervisory responsibilities, a plaintiff must allege and demonstrate that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id*. at 1199. Plaintiff asserts no allegations to satisfy any of these components. Furthermore, the mere act of alerting a prison official of an alleged constitutional violation does not create liability for that official. *See Doyle v. Cella,* No. 07–cv–01126–WDM–KMT, 2008 WL 4490111, at *2 (D. Colo. Sept. 30, 2008) (finding plaintiff's allegation that defendant warden was "made aware" of constitutional violations insufficient to establish personal participation of the defendant). I find that Plaintiff has failed to plead facts, even if true, for a factfinder to conclude that Defendants Archuleta and Tessier had the required personal participation to allow liability to attach. *See Robbins,* 519 F.3d 1242, 1247 ("The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.").

B.      Defendants Creany, Beatte, Wienpahl, and Meicer

Defendants Creany, Beatte, Wienpahl, and Meicer concede that Plaintiff has alleged their requisite personal participation and, for the purposes of the Motion, that the objective component of the asserted Eighth Amendment violation is met. [#22 at 10]. They argue instead that Plaintiff has failed to allege sufficient facts to demonstrate that they acted with deliberate indifference. [*Id.*]

Mr. Peterson alleges that Dr. Creany is liable for deliberate indifference on the basis that he originally prescribed tegretol, and for "the continued operation of a policy that caused…constitutional harm." [#6 at 7]. Plaintiff also alleges that Dr. Creany was aware that he had hepatitis and nonetheless prescribed tegretol with the instruction "do not take if patient has liver problems." [*Id.*] However, Plaintiff avers in his Response that when he visited Dr. Creany for treatment for the side effects of Tegretol, Dr. Creany ordered a blood test. [#36 at 3]. After consulting the results of Plaintiff's blood work, Dr. Creany summoned Plaintiff to his office and "order[ed] Plaintiff to stop taking tegratol." [*Id.* at 4]. Plaintiff also asserts that Dr. Creany "sent orders to medication dispensary to cease and desist giving [Plaintiff] tegratol." [*Id.*] Plaintiff does not allege interacting thereafter with Dr. Creany. Rather, he alleges that when he returned to see Dr. Creany, he was shown to Dr. John Doe "who treated [Plaintiff] with little or no concern," and who ultimately re-prescribed tegretol to Plaintiff. [*Id.*]

Plaintiff does not aver that Dr. Creany prescribed Tegretol, knowing or with reckless disregard that Mr. Peterson would be harmed. Even if Dr. Creany was originally negligent in prescribing Tegretol to Plaintiff, mere negligence does not give rise to a constitutional violation. *Martinez,* 563 F.3d at 1088. Furthermore, Dr. Creany took action to vacate the prescription upon receiving Plaintiff's blood work. These allegations do not demonstrate the kind of reckless behavior required to support an Eighth Amendment claim.

Mr. Peterson asserts that Defendant Beatte is contracted through CDOC to provide him mental health services and is "in charge of [his] mental health care." [#6 at 2, 7]. Although not entirely clear, Plaintiff appears to allege that Defendant Beatte is responsible along with Dr. John Doe for prescribing "carbamazepine," which he offers is another form of Tegretol, after Dr.

Creany had recognized its ill effects on Plaintiff and ordered that Plaintiff not receive it.  [#6 at 7].  Plaintiff alleges that Defendant Beatte ordered the prescription without checking his medical record, and thus Plaintiff was subjected to a second round of painful side effects as a result of ingesting the medicine.  [*Id.* at 8].  In this Circuit, allegations that a doctor inadvertently prescribed the wrong medication are insufficient to state an Eighth Amendment claim.  *See Brown v. Prison Health Services, El Dorado Correctional Facility*, 159 F. App'x. 840 (10th Cir. 2005) (affirming dismissal of prisoner's § 1983 complaint where doctor prescribed medication despite notes in the plaintiff's medical file indicating his allergy to that particular drug).  *See also Burns v. Huss*, No. 10–cv–2691–WJM–CBS, 2013 WL 2295422 (D. Colo. May 24, 2013) (adopting recommendation to dismiss prisoner's Eighth Amendment claim premised on defendant's failure to review plaintiff's medical file prior to prescribing drug to which plaintiff was allergic).  In *Brown*, the court noted that the drug the defendant prescribed was under a different brand name than that listed in the plaintiff's medical file, and thus there was no support that the defendant had *knowingly* subjected plaintiff to harmful medication.  *Id.* at 841. Similarly, Mr. Peterson's allegation that Defendant Beatte prescribed carbamazepine does not rise to an Eighth Amendment violation, regardless of whether she failed to first consult Plaintiff's medical file or failed to understand the similarities between the two drugs.  *See Erickson v. Newberry*, No. 07–cv–00618–WDM–BNB, 2008 WL 2690719 (D. Colo. July 3, 2008) (adopting recommendation to dismiss Eighth Amendment claim against prison official who administered codeine without reviewing the plaintiff's medical chart for allergy warnings); *Self,* 439 F.3d at 1233 ("negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").

With respect to Defendant Wienpahl, Mr. Peterson alleges that he is a health care provider who "when told and shown complications of the medication tegratol/carbamazepine showed complete lack of respect and total deliberate indifference and just laughed off and did nothing about the burst blood vessels, blood in eyes dripping out nose and ears – tremendous headache, etc…" [#6 at 8]. These allegations, though sparse, go beyond the inadvertent negligence described above. Defendant Wienpahl is a health care provider, and was thus positioned to minimize the pain and alleviate the symptoms Plaintiff suffered due to the side effects of the medication by addressing, as alleged, obvious health complications. I find that to the extent Plaintiff alleges Defendant Wienpahl served as a gatekeeper to medical care, and he prevented Plaintiff from accessing appropriate care despite observing these symptoms, Plaintiff has sufficiently alleged reckless indifference to a serious medical need. *See Montoya v. Newman*, --- F. Supp. 3d ----, 2015 WL 4456194, at *2, 6 (D. Colo. July 21, 2015) (denying defendant jail administrator's motion for summary judgment for qualified immunity where defendant ignored plaintiff detainee's request to see a physician despite knowledge that plaintiff was suffering "bloody phlegm and dark-possibly bloody-urine combined with fever, coughing, shortness of breath, and an inability to eat.").

Finally, Plaintiff alleges that on July 9, 2013, he was examined by a physician at a hospital who prescribed him pain medication to be administered immediately and that Defendant Meicer "denied the doctor's orders for prescribed pain medication and prescribed ice for me instead." [#6 at 8]. Plaintiff alleges that application of the ice "froze the blood clot and caused super severe pain in [his] leg and aggravated [his] untreated ciatic nerve damage further." [*Id.*] Plaintiff asserts that Defendant Meicer, in denying him the prescribed pain medication, explained

that it is "too expensive" and "only one other prisoner gets it and he really needs it."  [*Id.*; #36 at 3].   Contrary to Defendants' argument, these allegations do not suggest that Plaintiff merely disagrees with the type of treatment or medication received, *see* [#22 at 11]; but that Plaintiff did not receive treatment or medication of any kind despite a prescription by a physician.   Indeed, the allegations indicate that Defendant Meicer was motivated by fiscal concerns in instructing Plaintiff to ice his leg, rather than persuaded that icing would mitigate the pain.   Mr. Peterson alleges that his pain persists and he "limp[s] along with a multitude of medical complications." [#6 at 9].   I find that Plaintiff has sufficiently pled facts to demonstrate that Defendant Meicer knew of and disregarded a substantial risk of serious harm to Plaintiff.

## III.   Qualified Immunity

The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted).   Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation."  *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

Because this court finds that Plaintiff has stated a claim for an Eighth Amendment violation as to Defendants Wienpahl and Meicer, the subsequent inquiry is whether the law

governing the alleged conduct was clearly established as of December 2012, when Plaintiff alleges the offending conduct began. Indeed, the law surrounding the denial of medical care to convicted inmates has been clearly established since March 7, 2011. *Montoya*, 2015 WL 4456194, at *7 (citing *Mata*, 427 F.3d at 761). Accordingly, I find that Defendants Wienpahl and Meicer have not established at this time that they are entitled dismissal based on qualified immunity.

## IV.   Exhaustion of Administrative Remedies

Defendants Tessier, Wienpahl, Archuleta, and Meicer assert in the Motion that Plaintiff has failed to exhaust the available CDOC administrative remedies. [#22 at 4-5]. The PLRA requires prisoners to exhaust administrative remedies before filing a civil rights action. The statute provides, "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint). Exhaustion of administrative remedies is mandatory and is intended to give correction officials an opportunity to address complaints internally before initiation of a federal lawsuit. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion is an affirmative defense, which necessitates that Defendants meet the burden of proving it by a preponderance of the evidence. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

Defendants have attached a sworn affidavit to their Motion, to which is attached several exhibits, in support of their argument regarding Plaintiff's failure to exhaust administrative remedies. *See* [#22-1]. If, on a motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir. 1987) (finding that it was "appropriate for the court ... to convert the motion to a Rule 56 motion when extraneous evidence was submitted in the form of affidavits by both parties"). This court notified Plaintiff that it would consider converting Defendants' Motion into one for summary judgment, and solicited additional briefing from Plaintiff as to the administrative exhaustion issue. [*See* #40]. Plaintiff submitted a one-page brief in response. [*See* #41]. Accordingly, Plaintiff has received the notice to which he is entitled prior to a court converting a motion to dismiss under Rule 12(b)(6) to one for summary judgment under Rule 56 (*see* Fed. R. Civ. P. 12(d), 56(f); *see also Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995)), and this court recommends treating the Defendants' Motion to Dismiss [#22] as a motion for summary judgment solely as to the issue of exhaustion of administrative remedies. *Cf. Stallings v. Ritter*, No. 08–cv–00033–EWN–KLM, 2008 WL 2980008, at *2 (D. Colo. July 31, 2008) (giving notice to plaintiff prior to converting the portion of the motion to dismiss addressing exhaustion of administrative remedies into a motion for summary judgment).

The CDOC provides a three-step prison grievance process through Administrative Regulation 850-04. *See* [Affidavit of Anthony DeCesaro, #22-1 at ¶ 4]. *See also* CDOC Admin. Reg. No. 850–04 § IV(H)(1)(a-c). This system allows a prisoner to file a step 1 grievance within

30 calendar days from the date he knew of the facts giving rise to his grievance.  CDOC Admin. Reg. No. 850–04 § IV(F)(1)(a).  A response is due from the CDOC twenty-five days after receipt of the step 1 grievance. CDOC Admin. Reg. No. 850–04 § IV(F)(1)(b).  Upon receiving a response, the prisoner has five days to submit a step 2 grievance.  CDOC Admin. Reg. No. 850–04 § IV(F)(1)(d).  CDOC again has twenty-five days to respond.  With that response, the prisoner is allowed five days to file a step 3 grievance, to which CDOC may issue a final response within forty-five days. CDOC Admin. Reg. No. 850–04 § IV(F)(1)(c-d).  [*See* #22-1 at ¶¶ 5-8].

Anthony DeCesaro, a CDOC Step 3 Grievance Officer, attests Mr. Peterson filed only two step 3 grievances concerning medical care.  [#22-1 at ¶¶ 1, 12].  The first grievance (#C-FF 13/14/-00052742) relates to the medication Defendant Beatte prescribed for him.  [#22-1 at ¶ 13; #22-1 at 23].  The second grievance (#C-FF 12/13-00041098) relates to the removal of Plaintiff's medical work restrictions.  [#22-1 at ¶ 14; #22-1 at 28].  Mr. DeCesaro attests that he found no other record of Plaintiff filing a step 3 grievance concerning medical care while incarcerated in the CDOC.  [#22-1 at ¶ 15].

Plaintiff asserts in his Response that he exhausted the grievance process.  [#36 at 2].  In his supplemental briefing submitted at the direction of this court, he argues that he could not file a duplicate grievance, and because he "had already filed the 3 steps in the original [grievances] per AR 850-04 [he] could not have grieved this issue again to include the other defendants." [#41].  The CDOC regulations require that "[e]ach grievance shall address only one problem or complaint and include a description of the relief requested. Problems that arise from the same incident or set of facts shall be grieved in one grievance, even though it may involve multiple

DOC employees, contract workers, or volunteers."  CDOC Admin. Reg. No. 850–04 § V(D)(6).

Plaintiff is correct regarding the grievance of a previously grieved issue: "[g]rievances that

duplicate an issue previously grieved by that offender shall be accepted, scanned and

automatically assigned a grievance number, and forwarded to the appropriate party to be denied

on procedural grounds."  *Id.* at § V(D)(8).  However, Plaintiff argues only that Dr. Miller was

unknown to him at the time the events underlying the Complaint occurred.  Plaintiff named

Defendant Beatte and Defendant Creany in grievance #C-FF 13/14/-00052742, and he does not

represent that he could not identify Defendants Tessier, Wienpahl, Archuleta, and Meicer at the

time he filed that grievance.  Accordingly, I find that Plaintiff failed to exhaust the available

administrative remedies as to these Defendants on any claim, whether styled as a § 1983 claim or

as a violation of the ADA.

## V.  Additional Considerations

The court next turns *sua sponte* to the consideration of two issues:  (1) whether Plaintiff

has pled sufficient facts to sustain his Amended Complaint against the Doe Defendants and (2)

whether Plaintiff has sufficiently pled a cognizable claim for a violation of Title II of the ADA,

distinct from his § 1983 claim.

### A.  John and Jane Does

Mr. Peterson identified John Doe in his Response as Dr. Miller, though has not moved to

amend the Complaint to substitute him as a Defendant.[3]  [#36 at 3].  Plaintiff asserts that he

visited Dr. Miller complaining of side effects from the Tegretol prescription, including blood

clots, bruising, "bleeding out," and complications with his liver, and Dr. Miller responded, "[o]h

---

[3] There is also no indication that Dr. Miller has been served with either the original or Amended Complaint.

well, that's what happens to old people."[4]   [#6 at 4].   Plaintiff alleges that during that visit, Dr. Miller prescribed him "webutrin and carbamazepine/tegratol."   *Id.* at 4, 8].   Plaintiff appears to assert that he returned to Dr. Miller to complain of various side effects of the medication (similar to after Dr. Creany had prescribed it), and Dr. Miller "holler[ed]" and "scream[ed]" at him that he should have "known that [carbamazepine] was deadly to [him]."   [#6 at 8].   Plaintiff states in his Response that Dr. Miller "stopped giving me the med [carbamazepine] and by the time I saw an outside [doctor] on my serious medical needs most the burst veins had cleared up."   [#36 at 3].   As discussed above with respect to Defendant Beatte, Plaintiff fails to allege that Dr. Miller knowingly or with reckless disregard prescribed carbamazepine/Tegretol to him; and the allegations as pled do not demonstrate the mental state necessary to satisfy the subjective component of an Eighth Amendment claim.

Plaintiff alleges that Jane Doe is a medical line nurse who, on June 28, 2013, observed Plaintiff's blood clots and advised him to submit a sick call slip.   [#6 at 9; #36 at 3].   Plaintiff asserts he should have been examined immediately, but followed Jane Doe's instruction, submitted the slip, and waited.   He alleges that while waiting to be seen, his "legs gave out…and veins kept bursting."   *Id.*   However, Plaintiff concedes in his Response that when Dr. Creany eventually saw him and examined his symptoms, he ordered a blood exam and thereafter ordered that Plaintiff be taken off of Tegretol.   [#36 at 3].   Plaintiff further states that "eventually the bleeding stopped when I was final taken off tegratol."   As with John Doe, the allegations

---

[4] Plaintiff was 56 years old at the time the events underlying the Amended Complaint occurred. *Id.*

surrounding Jane Doe as pled, even taken as true, only support a finding of negligence rather than deliberate indifference.

### B. ADA Claim

As noted above, Plaintiff identified the ADA, 42 U.S.C. § 12101 *et seq.*, as an alternative ground for relief in his Amended Complaint. [#6 at 1]. Prisons are public entities covered by Title II of the ADA. *See Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) (citing *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209, 118 S.Ct. 1952 (1998)). To state a claim for a violation of Title II of the ADA, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *Hughes v. Colorado Dep't of Corrections*, 594 F. Supp. 2d 1226, 1239 (2009) (citing *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)).

Magistrate Judge Boland previously observed with respect to Plaintiff's original Complaint that "[h]e appears to complain only about the quality and extent of medical services he received," and that such complaints did not constitute an ADA violation. [#5 at 2-3]. Judge Boland specifically found that Mr. Peterson "fail[ed] to allege facts indicating that he is a qualified individual with a disability who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and that exclusion, denial of benefits, or discrimination was because of a disability." [*Id.* at 2]. Judge Boland then directed Plaintiff to file an Amended Complaint to cure the deficiencies identified. [*Id.* at 7].

Despite the opportunity to amend, Mr. Peterson still fails to allege sufficient facts to support a violation of Title II of the ADA.  Mr. Peterson does not allege facts to demonstrate that he is disabled under the law, or that Defendants deprived him of services, programs, or activities due to such actual or perceived disability.  [#6].  Even assuming that Mr. Peterson's recitation of his various medical conditions was sufficient to plead a *prima facie* case of disability, failure to provide medical treatment to a disabled prisoner does not constitute an ADA violation.  *See Rashad*, 4 F. App'x at 560.  And Plaintiff's failure to allege that the Defendants discriminated against him on the basis of his disability, *e.g.*, that the disabled prisoner has been denied services that have been provided to other non-disabled prisoners, subjects any claim brought by Mr. Peterson based on the ADA subject to dismissal under Rule 12(b)(6).

Accordingly, because it would be futile to permit Plaintiff leave to amend his Complaint to substitute Dr. Miller for John Doe, or identify the nurse named as Jane Doe, and because despite explicit instructions to do so, Plaintiff has failed to allege facts to support an independent claim for a violation of the ADA, this court recommends the dismissal of the claims asserted against John Doe and Jane Doe and under the Americans with Disabilities Act pursuant to 28 U.S.C. § 1915(e)(2)(b) and Rule 8 of the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, this court **RECOMMENDS** that:

(1)     The Motion to Dismiss or Alternatively Motion for Summary Judgment [#22] be GRANTED as follows:

(2)     The Motion to Dismiss regarding Plaintiff's claims for violation of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983 be GRANTED without prejudice as to Defendants Tessier, Archuleta, Creany, Beatte, John Doe, and Jane Doe;

(3)     The Motion to Dismiss be CONVERTED into a Motion for Summary Judgment as to the issue of exhaustion of administrative remedies and GRANTED as to Defendants Wienpahl, and Meicer; and

(4)     This action be DISMISSED in its entirety, without prejudice.[5]

DATED: November 12, 2015                         BY THE COURT:

s/Nina Y. Wang_____
United States Magistrate Judge

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).